IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORY J. HOLMES,                          :
                                         :
                    Petitioner,          :
                                         :
        v.                               :        Civil Action No. 18-385-RGA
                                         :
ROBERT MAY, Warden, and                  :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
                    Respondents.[1]      :
_____

**<u>MEMORANDUM OPINION</u>**

Cory J. Holmes.  *Pro se* Petitioner.

Matthew C. Bloom, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

March 9, 2021
Wilmington, Delaware

_____

[1]Warden Robert May has replaced former Warden G.R. Johnson, an original party to the case.
*See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Cory J. Holmes' Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 3; D.I.6)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 12; D.I. 17)  For the reasons discussed, the Court will dismiss the Petition.

## I.    BACKGROUND

While driving his mother's car in New Castle, Resean Freeman saw a man that he recognized on the side of the road.  It was snowing, and Freeman offered the man, [Petitioner], a ride.  After [Petitioner] indicated his preferred destination, Freeman testified that [Petitioner] "pull[ed] a gun out and sa[id], 'Get the fuck out the car you bitch ass.'"  Freeman testified that [Petitioner] was wearing a "black skull cap, a black car jacket,[2] dark blue pants."  After Freeman exited the vehicle, [Petitioner] drove away with the car.  Later that evening, [Petitioner] called Freeman and informed him of the location of the car.  Approximately one week later, after seeing [Petitioner's] picture in a newspaper article, Freeman identified his assailant as [Petitioner] and notified the police.

Later on that same evening that Freeman encountered [Petitioner], Madinah Elder and Harry Smith were at home and heard a knock on the door.  Before opening the door, Smith asked, "who is it?", and a voice replied, "WPD."  Smith testified that he then opened the door, and that the visitor pointed a gun at his waist, and exclaimed, "[w]ho the fuck is staying here?", and demanded money.  First, Elder gave the man twenty dollars.  Elder then gave the man an additional one hundred dollars.  Elder testified that immediately thereafter, the man "clicked the gun and said, 'Bitch, stop playing.'"  Elder then retrieved another one hundred dollars and gave it to the man.

When the man's attention was temporarily distracted, Elder ran out of the house. Subsequently, Smith fled the house too. Shortly thereafter, the police were notified of the incident.  Elder and Smith testified that the man was wearing a black skull cap, a black Carhartt jacket, and dark pants.

---

[2] It seems probable that the testimony was "Carhartt jacket," not "car jacket."

> Police arrived at the scene.  After following footprints in the snow that began at Elder['s] home, Officer Ryan Dorsey observed a man scaling the fence of a nearby home.  After the man ignored Dorsey's demand to stop and attempted to scale another fence and kick in a door, Dorsey tasered the man, who turned out to be [Petitioner].  When police arrested [Petitioner], he was wearing a white T-shirt.  The police recovered a black jacket nearby, but never recovered a gun.  [Petitioner] was charged by indictment with carjacking first degree, five counts of PFDCF, two counts of robbery first degree, burglary first degree, attempted robbery first degree, PDWPP, and resisting arrest.

*Holmes v. State*, 11 A.3d 227 (Table), 2010 WL 5043910, at *1 (Del. 2010) (footnote added).

On November 2, 2009, a Delaware Superior Court jury found Petitioner guilty of first degree carjacking, two counts of first degree robbery, attempted first degree robbery, first degree burglary, five counts of possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited.  *See id*. at *3-4.  On November 20, 2009, the Superior Court sentenced Petitioner to forty-two years in prison, suspended after thirty-seven years for eighteen months of probation.  *See id*. at *4.  The Delaware Supreme Court affirmed Petitioner's conviction on December 9, 2010.  *See id*. at *4

In October 2011, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 and a motion for the appointment of counsel.  (D.I. 12 at 10; D.I. 18-18)  The Superior Court denied both motions in June 2012.  (D.I. 12 at 10)  Petitioner appealed, and the Delaware Supreme Court reversed and remanded the case back to the Superior Court to appoint counsel for Petitioner in order to pursue his Rule 61 motion.  (*Id*.)

On remand, Petitioner's appointed counsel filed an amended Rule 61 motion ("2013 Rule 61 motion").  (D.I. 18-13 at 16-67)  On April 17, 2015, a Superior Court Commissioner issued a report recommending the denial of the 2013 Rule 61 motion.  (D.I. 13-18 at 41-58)  On July 23,

2015, the Superior Court adopted the Report and Recommendation and denied the 2013 Rule 61 motion. *See Holmes v. State*, 135 A.3d 79 (Table), 2016 WL 1055050, at *4 (Del. Mar. 14, 2016); (D.I. 13-18 at 59-60)  Petitioner appealed (D.I. 13-18), and the Delaware Supreme Court affirmed the Superior Court's judgment on March 14, 2016. *See Holmes*, 2016 WL 1055050, at *6.

Petitioner filed a second *pro se* Rule 61 motion on April 7, 2016 ("2016 Rule 61 motion").  (D.I. 13-28 at 79-115)  The Superior Court summarily denied the 2016 Rule 61 motion as procedurally barred under Rule 61(d)(2) because it was successive.  (D.I. 13-40)  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *See Holmes v. State*, 2018 WL 637312, at *1 (Del. Jan. 30, 2018).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

3

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is

exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial –  that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**B.   Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal

court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's

decision was "contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States," or the state court's decision was

an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C.

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105,

115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's

order is unaccompanied by an opinion explaining the reasons relief has been denied."

*Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary."  *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state

court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This

presumption of correctness applies to both explicit and implicit findings of fact, and is only

rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1);

6

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.    DISCUSSION

Petitioner's timely filed  § 2254 Petition asserts the following five Claims:  (1) defense counsel provided ineffective assistance by failing present phone record evidence that supported Petitioner's version of the events and discredited the version provided by the State's witnesses; (2) the trial court violated Petitioner's constitutional right to confront his accuser and his right to due process by admitting a newspaper article into evidence at trial; (3) the police elicited statements from Petitioner about the robbery offense in violation of his Sixth Amendment right to counsel, and the State's admission of his recorded statement at trial violated Petitioner's due process rights; (4) the Superior Court violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments by interrupting defense counsel's closing argument and instructing the jury that a choice-of-evils-defense was not available; and (5) cumulative error. (D.I. 6-1 at 55-56)

### A.  Claim One:  Ineffective Assistance of Counsel With Respect to Phone Records

In his first Claim, Petitioner contends that defense counsel provided ineffective assistance by failing to utilize certain cell phone records at trial.  According to Petitioner, the phone records would have discredited State witnesses Freeman, Elder, and Smith, because the phone calls supported his version of the events, namely, that he and the State's witnesses knew each other from previous drug deals, and the witnesses "conspired to set him up for revenge for their drug losses."  (D.I.  13-28 at 95-96)

7

The record reveals that Petitioner did not exhaust state remedies for Claim One. Although Petitioner presented the instant argument in his original *pro se* Rule 61 motion filed in 2011 (D.I. 18-18), he did not re-assert the Claim in his 2013 Rule 61 motion after the case was remanded to the Superior Court (D.I. 18-13 at 16-67).  He also failed to present Claim One to the Delaware Supreme Court when he appealed the Superior Court's denial of his 2013 Rule 61 motion.  While Petitioner did present Claim One in his *pro se* 2016 Rule 61 motion and in his subsequent Rule 61 appeal concerning the *pro se* 2016 Rule 61 motion, that presentation did not act to exhaust state remedies because the Delaware state courts denied the *pro se* 2016 Rule 61 motion as procedurally barred under Rule 61(d)(2).

At this juncture, any attempt by Petitioner to raise Claim One in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014).  Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claim.  Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to this Claim.

Since Petitioner is precluded from exhausting state remedies for Claim One at this point, the Court must treat the Claim as technically exhausted but procedurally defaulted. Consequently, the Court Court cannot review the merits of Claim One absent a showing of cause

for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

Petitioner asserts that his default should be excused pursuant to *Martinez v. Ryan,* 566 U.S. 1 (2012), because his appointed post-conviction counsel failed to include Claim One in his 2013 Rule 61 motion that was filed after remand.  (D.I. 17 at 1-6)  In *Martinez*, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *Id*. at 16-17.  In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland v. Washington,* 466 U.S. 668 (1984), that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced.  *Id*. at 9-10, 16-17.  A "substantial" ineffective assistance of trial counsel claim is one that has "some merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability.  *Id*. at 14-15.

The Third Circuit recently explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*."

*Workman v.  Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019).  "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that

9

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *Id*. at 938 (quoting *Miller-El*, 537 U.S. at 336).  To demonstrate that post-conviction counsel's ineffectiveness caused the procedural default, a petitioner must show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.,* "that his state post-conviction counsel's performance fell below an objective standard of reasonableness."  *Workman*, 915 F.3d at 941.

Here, Petitioner has failed to demonstrate that the underlying ineffective assistance of defense counsel argument in Claim One has "some merit" under the standard contemplated by *Martinez* and *Workman*.  Petitioner asserts that the cell-phone records would have corroborated various portions of his story and also would have impeached the State's witnesses, leading the jury to weigh their testimonies differently.  But as defense counsel explained in an affidavit responding to Petitioner's original *pro se* Rule 61 Motion filed in 2011: (i) the records reflected that Freeman called 911, which substantiated the State's allegation that he was carjacked; (ii) the records substantiated Freeman, Elder, and Smith's familiarity with Petitioner and bolstered their identifications of him by showing that they had prior contact; and (iii) even if the records could support Petitioner's claim that Freeman, Elder, and Smith were drug dealers and impeach them on this point, establishing that fact would also tend to prove Petitioner's motive, plan, and criminal intent: drug dealers are targets for robbery because they are known to carry a lot of cash and generally unwilling to call the police.  (D.I. 13-10 at 62-73)  What Petitioner fails to acknowledge, but which defense counsel recognized in his Rule 61 affidavit, is that the phone records contained evidence that would have corroborated the State's witnesses testimony and

10

could have been more damaging than helpful to Petitioner.  (*See* D.I. 13-10 at 70-71)  In other words, Petitioner's claims about how the jury would have received and weighed the evidence are unsupported and entirely speculative.

Based on the foregoing, Petitioner has failed to establish that the underlying ineffective assistance of counsel claim has some merit, or that post-conviction counsel's failure to present that claim in his 2013 Rule 61 motion fell below an objective standard of reasonableness.  Thus, Petitioner's attempt to establish cause under *Martinez* is unavailing.

In the absence of cause, the Court will not address the issue of prejudice.  Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.  Accordingly, the Court will deny Claim One as procedurally barred from federal habeas review.

## B.   Claim Two: Admission of Newspaper Article Violated State Evidentiary Law and Petitioner's Federal Confrontation and Due Process Rights

During Petitioner's criminal jury trial, Freeman testified that he contacted the police after he recognized his assailant in a newspaper story.  *See Holmes*, 2010 WL 5043910, at *2.  The article summarized the home invasion that Petitioner committed in Wilmington and his capture by police who followed his footprints in the snow.  *Id*. at *2-3.  The article also contained Petitioner's photograph.  *Id*.  Freeman, the victim of Petitioner's carjacking earlier on January 27, 2009, had reported the crime to police immediately, but was unable to identify his assailant by name.  After Freeman saw the Delaware Online article, he contacted Detective Seth Polk and told him that Petitioner had committed the carjacking against him.  When the State initially offered the Delaware Online article for identification, it was to be a redacted version that

11

contained the date, headline, and Petitioner's photograph and name.  *Id*.  During a sidebar

conference, the State made the following statement:

> Right now I'm going to ask [that the article] be marked for
> identification and show it to him; ask him if that's the article, if that's
> what he read, if that's the article he saw later on. When you hear all
> the evidence, what's in here's almost-it's one hundred percent
> consistent with what the witness testified, and if it needs to be
> redacted then I'll redact it. My primary concern is the picture.

*Holmes*, 2010 WL 5043910, at *2.  Later in the trial, Petitioner testified that he had read the

newspaper article. Thereafter, the State sought to introduce the entire article into evidence,

arguing as follows:

> It's not being offered for truthfulness. First of all, it's in [Petitioner's]
> statement.  He makes reference to it.  I cross examined him about it.
> He admitted that he had information about it, and that he actually
> read it.... We're not offering it for the truth or veracity, we're offering
> it to show a motive, intent, his state-of-mind with regard to his
> credibility and the issue of recent fabrication.... Now taking into
> consideration the nature of [Petitioner's] statement where he gives
> at least three different versions in there, and all the inconsistencies
> and admitted lies, I think there is a strong argument that he used this
> article, which he admits that he saw, in an attempt to fabricate his
> story, either to the Detective or in court when he testified.  Again,
> it's not being offered for its truth or veracity.

*Id*. at *3.  Defendant objected to the article's admission.  The.Superior Court overruled

the objection, explaining:

> So I've read the article, and most of what's said or I shouldn't say
> most of what's said-everything that's said in here has been the
> subject of testimony.  There's been a witness who has testified to it
> and the jury may or may not believe that witness, and this, and the
> news story makes clear it's reporting a statement of a witness.

*Id*.  The Court did not instruct the jury on the limited purpose for which the article was admitted.

*Id*..

In Claim Two of his form Petition, Petitioner asserts:

> Trial court violated [Petitioner's] Sixth Amendment right to confront his accuser when it allowed admission of newspaper article into trial (see memorandum).  Trial court's allowance of newspaper article into trial violated [Petitioner's] due process Fourteenth Amendment rights.

(D.I. 6 at 7)  In addition, Claim Two in Petitioner's Memorandum in Support challenges the admission of the newspaper article on the grounds that it constituted hearsay under Delaware evidentiary rules and was highly prejudicial.  (D.I. 6-1 at 14-18)  Petitioner's presentation of Claim Two in his Memorandum in Support consists of the relevant pages from his opening brief on direct appeal.  (*Id.*)

To the extent Claim Two challenges the admission of the newspaper article as hearsay and for being prejudicial, Petitioner presented this argument to the Delaware Supreme Court on direct appeal.  (D.I. 13-2 at 13-17)  The Delaware Supreme Court analyzed the issue under Delaware Rule of Evidence 801(c), which defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  *Holmes*, 2010 WL 5043910, at *4.  The Delaware Supreme Court concluded that the State sought to admit the article for a reason other than to prove the truth of its content, namely, to argue that Petitioner used the article to fabricate his story.  *See id*.  In other words, as a matter of Delaware evidentiary law, the newspaper article did not constitute hearsay. However, the Delaware Supreme Court also concluded that the trial court erred by not giving a jury instruction on the limited purpose for the article's admission, but that the error was harmless

beyond a reasonable doubt "[b]ecause the other, admissible evidence against [Petitioner] was sufficient to sustain his convictions." *Id*. at *5.

On habeas review, the Court must accept the Delaware Supreme Court's interpretation of Delaware's hearsay exceptions and rules. *See Scott v. Johnson*, 2014 WL 4955704, at *6 (D. Del. Sept. 9, 2014). Consequently, to the extent Claim Two challenges the Delaware Supreme Court's conclusion that the newspaper article did not constitute hearsay, Petitioner has failed to present an issue cognizable on federal habeas review.

Petitioner also asserts that the admission of the newspaper article violated his due process and confrontation rights under the Constitution. The Court perceives two ways of viewing this argument, both of which lead to same conclusion of procedural default. First, to the extent Petitioner is asserting "freestanding" arguments that the admission of the newspaper article violated his due process and confrontation rights under the Constitution, the record reveals that Petitioner did not exhaust state remedies for these allegations because he did not fairly present[3] the instant federal constitutional contentions in the argument he raised to the Delaware Supreme Court on direct appeal. Second, given the Court's obligation to liberally construe *pro se* filings, it would be reasonable for the Court to construe Petitioner's arguments concerning his

---

[3]"If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Although the last sentence of Petitioner's appellate argument stated that the article's admission "deprived" him of "fair trial," (D.I. 13-2 at 16-17), Petitioner did not mention his confrontation rights, or cite any federal constitutional provision or standard. Consequently, the cursory "fair trial" reference in Petitioner's appellate brief was insufficient to put the Delaware Supreme Court on notice that he was asserting a federal constitutional claim. *See Gray v. Netherland*, 518 U.S. 152, 16 (1996); *McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 514 (D. Del. 2003) ("A petitioner's use of broad concepts such as 'due process' and 'fair trial' does not provide sufficient notice to a state court that a petitioner is asserting a federal constitutional claim.")

confrontation and due process rights as a challenge to the Delaware Supreme Court's additional holding that the trial court's failure to provide a limiting instruction only amounted to harmless error, rather than as independent free standing challenges to the admission of the newspaper article.  Stated another way, Petitioner purportedly is alleging that the Delaware Supreme Court erred in ruling that the lack of a limiting instruction was harmless because the admission of the newspaper article violated his due process and confrontation rights.  Petitioner, however, did not exhaust state remedies for this constitutional challenge to the Delaware Supreme Court's harmless error holding, because he did not present the challenge to the Delaware Supreme Court in his Rule 61 appeals.[4]

Since Petitioner would be time-barred from raising either version of the federal constitutional arguments in Claim Two in a new Rule 61 motion, the Court treats both versions as technically exhausted but procedurally defaulted.  Consequently, the Court cannot review the merits of the due process/confrontation arguments in Claim Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

---

[4]The Court acknowledges that Petitioner did challenge the prejudice caused by the lack of a limiting instruction within an ineffective assistance of counsel claim that he raised in his original *pro se* Rule 61 motion filed in 2011, stating:

> Abuse of Trial Judge Discretion
> Misleading jury instructions/ineffective assistance of counsel failed
> to request curative/limited instruction/appointed counsel failed to
> argue on appeal.

(D.I. 18-18 at 9)  However, unlike the response he filed with respect to the default of Claim One, Petitioner does not assert that his post-conviction counsel's failure to raise this variation of Claim Two in his 2013 Rule 61 motion should act to excuse his default under *Martinez*.  (*See* D.I. 17) As such, the Court engages in the "typical" cause-and-prejudice analysis applicable to default situations.

Petitioner does not provide an explanation for not presenting his due process/confrontation arguments concerning the newspaper article to the Delaware Supreme Court on post-conviction appeal.  The failure to demonstrate cause obviates the Court's requirement to address prejudice.  Nevertheless, Petitioner cannot demonstrate actual prejudice stemming from the admission of the newspaper article, because he cannot show that the admission "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Murray*, 477 U.S. at 494.  To begin, the admission of the article did not violate his confrontation rights.  The Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  The threshold question is whether the statement is testimonial.  *See Miller v. Metzger*, 2017 WL 3727316, at *4 (D. Del. Aug. 29, 2017).  A newspaper article is not a testimonial statement, and its admission does not violate the Confrontation Clause, when it is offered for some purpose other than to prove the truth of its contents.  *See Gonzalez-Lauzan v. United States*, 2008 WL 343492, at *14–15 (S.D. Fla. Feb. 5, 2008) (holding that admission of a newspaper article for purposes other than to prove the truth of the matters asserted therein did not violate confrontation rights).  In Petitioner's case, the State offered the article to demonstrate recent fabrication, not prove the truth of the matters asserted therein, and thus its admission did not implicate the Confrontation Clause.  In addition, the witnesses who supplied the facts recounted within the article testified and were subject to cross-examination.  (D.I. 18-4)

16

Petitioner also cannot show that the admission of the newspaper article violated his due process rights.  First, the  Supreme Court has not held that the admission of the type of evidence at issue here – a non-testimonial newspaper article – violates due process.  Second, the state submitted the text of the article in its rebuttal case, not its case-in-chief, and offered it to challenge the credibility of Petitioner's testimony rather than to prove the elements of any offense charged.  (D.I 18-3 at 18)  The article constituted cumulative evidence because it "did not include any information of which the jury was not otherwise fully informed through admissible evidence introduced at the trial."  *Holmes*, 2010 WL 5043910, at *5.  And finally, as found by the Delaware Supreme Court and supported by the overall record in this case, the other admissible evidence against Petitioner was sufficient to sustain his convictions.  *See id.*

Petitioner also has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.  Accordingly, the Court will deny Claim Two as procedurally barred from federal habeas review.

### C.  Claim Three:  Petitioner's February 19, 2009 Police Statement

[Petitioner] was charged with offenses related to the robbery.  On February 4, 2009, [Petitioner] was appointed counsel and a preliminary hearing was held.

In the meantime, Freeman identified [Petitioner] as the person who took his car.  The police interrogated [Petitioner] regarding this incident on February 19, 2009.  After reading the *Miranda* rights, the officer asked [Petitioner] if he understood them. [Petitioner] replied, "Yes."  [Petitioner] then asked if he had charges, and the officer clarified that he was informing [Petitioner] of his rights before he talked to him. The officer asked [Petitioner] again if he was willing to talk about what happened. [Petitioner] responded: "I don't know what's goin [sic] on yet."  The officer explained again that he had questions about a carjacking. Ultimately, [Petitioner] agreed to speak with the officer and signed a written waiver of his *Miranda* rights.

17

[Petitioner] discussed the carjacking with the officer and also volunteered statements regarding the robbery.  He told the officer that he did not rob Elder and was at her home to purchase drugs.  He told the officer that he knew Freeman and had contacted him to purchase drugs as well.  According to [Petitioner], Freeman picked him up so that the two men could go retrieve the drugs.  [Petitioner] then told the officer that he became uncomfortable and asked Freeman to drive him home.  At this point, the following exchange occurred:

> [Petitioner]:   I think I'm gonna need lawyer or something man because I don't know what ...
>
> Officer:  Listen, here's the deal. You have a right to get a lawyer.  I told you that in the beginning.  You have the right . . .
>
> [Petitioner]:  I don't know how people can just say I done something.
>
> Officer:  Well that's why I'm here to talk to you.
>
> [Petitioner]:  But, I'm already charged with that.
>
> Officer:  You're already charged with it, but, this has a long process to go through, alright.  There is a long process.  I still have to talk to the Attorney General's Office about all this and tell them my case.  Then they're going to look at it and decide whether to keep going with the charges or not.
>
> [Petitioner]:  Please help me man. Please help me.

Although the officer repeated [Petitioner's] right to counsel, [Petitioner] did not invoke that right. As [Petitioner] continued talking with the officer, he admitted that he met with Freeman to purchase drugs but ultimately stole the drugs and left in Freeman's car.  He also said that he called Freeman later to let him know where to pick up his car.  After the interview, [Petitioner] was charged with offenses related to the carjacking. Those charges were then consolidated with the robbery charges.

> At trial, as part of the State's case, Freeman testified that he saw [Petitioner] walking on the side of the road and offered to give him a ride.  Freeman then testified that, once in the car, [Petitioner] pulled out a gun and said, "Get ... out of the car you bitch ass." Freeman complied and [Petitioner] drove off.  The State also called Elder and Smith. Both testified that [Petitioner] knocked on their door and entered with a gun.  Elder testified that she was able to flee the home while [Petitioner] was distracted.
>
> In his defense, [Petitioner] testified that he intended to meet Freeman to purchase drugs but when they met, he took the drugs from Freeman.  He then said that Freeman was coming for him, so he took Freeman's car without his permission.  He also testified that he went to Elder's home to purchase drugs.  He stated that Elder had shorted him on the amount, so he took the drugs without paying. Throughout his testimony, [Petitioner] denied having a weapon during either incident.

*Holmes*, 2016 WL 1055050, at *1-2.  The State cross-examined Petitioner about his February 19, 2009 statement.  (D.I. 18-13 at 45)  After the defense rested, the State introduced the February 19, 2009 statement through the officer's testimony.  (*Id*. at 46)  A forty-five minute audio portion of the statement was played and then entered into evidence for the jury to review during deliberations.  (*Id*.)  Since Petitioner had  mentioned in his testimony that he had offered to help police in exchange for help in his case, the State was permitted to play a five minute audio of another portion of the statement on that topic.  (*Id*.)  This five minute audio segment was also entered into evidence for the jury to review during deliberations.  (*Id*.)

On post-conviction appeal, Petitioner challenged the admission of his February 19, 2009, statement, arguing,

> [T]he admission of his February 19, 2009 statement to the police violated his rights under both the Fifth and Sixth Amendments of the U.S. Constitution and the corresponding provisions of the Delaware Constitution. "Under the Delaware Constitution, ... 'if a suspect attempts to invoke [his or her] *Miranda* rights during an interrogation, but does not do so unequivocally, the police must

> clarify the suspect's intention before continuing with the interrogation.'" "[A] finding of ambiguity rests on the totality of the circumstances...." The waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception ... [and] must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*Holmes v. State*, 2016 WL 1055050, at *4 (internal citations omitted).  On post-conviction appeal, the Delaware Supreme Court summarized the issue presented and applicable law as follows:

> [Petitioner] claims that the admission of his February 19, 2009 statement to the police violated his rights under both the Fifth and Sixth Amendments of the U.S. Constitution and the corresponding provisions of the Delaware Constitution. "Under the Delaware Constitution, ... 'if a suspect attempts to invoke [his or her] *Miranda* rights during an interrogation, but does not do so unequivocally, the police must clarify the suspect's intention before continuing with the interrogation.'" [*Garvey v. State*, 873 A.2d 291, 296 (Del. 2005)] "[A] finding of ambiguity rests on the totality of the circumstances...." [*Id*. at 297]  The waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception ... [and] must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." [*Hubbard v. State*, 16 A.3d 912, 913 (Del. 2011)]

*Id.*  The Delaware Supreme  Court rejected Petitioner's argument that the police violated his right to counsel under the Fifth and Sixth Amendments, opining:

> [Petitioner] was read his *Miranda* rights on the audio recording of the interrogation.  The officer then asks, "Understand all that? That's a yes?" to which [Petitioner] replies, "Yes."  [Petitioner] then tells the officer that he "do[esn]'t know what's goin [sic] on yet," and the officer tells him the questions are about a carjacking.   After [Petitioner] claims his innocence, the officer again asks, "Are you willing to talk to me then?"  [Petitioner] replied affirmatively. [Petitioner] points to no evidence of coercion, intimidation, or deception by the police in obtaining this explicit waiver.

Further, the police attempted to clarify [Petitioner's] intentions after he said, "I think I'm gonna need a lawyer or something man because I don't know what ..."  The officer stopped questioning [Petitioner] and stated: "Listen, here's the deal. You have a right to get a lawyer. I told you in the beginning. You have the right...."  [Petitioner] then interrupted the officer and said, "I don't know how people can just say I done something." Here, [Petitioner] did not unequivocally invoke his right to an attorney, but the officer still sought clarification by reminding [Petitioner] of his right to counsel. [Petitioner] cut the officer's reminder short and continued to talk. The totality of the circumstances clearly show that [Petitioner] knew of, and chose not to invoke, his *Miranda* rights.

[Petitioner] also contends that his Sixth Amendment right to counsel was violated when he was questioned by the officer because he had already been appointed counsel at his preliminary hearing regarding the charges relating to the robbery. "[A]n accused who is admonished with the [ *Miranda* ] warnings ... has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." First, the officer approached [Petitioner] regarding the carjacking, a crime with which [Petitioner] had not been charged. After waiving his *Miranda* rights, [Petitioner] volunteered information related to the robbery, which acted as a waiver of his Sixth Amendment right to counsel regarding the robbery charges.

*Id.* at *4-5.

In Claim Three, Petitioner raises three complaints about his February 19, 2009 statement to the police.  First, he contends that the police elicited his statement about the robbery offense in violation of his right to counsel under the Sixth Amendment.  Although Petitioner explicitly mentions his right to counsel under the Sixth Amendment, when viewed in conjunction with his Rule 61 filings, it appears that he is also alleging a violation of his right to counsel under the Fifth Amendment.  Next, he contends that the State failed to comply with the Delaware Rules of Evidence in how it admitted and used the February 19, 2009 statement at trial.  Third, Petitioner asserts that defense counsel provided ineffective assistance by failing to file a motion to suppress

21

the February 19, 2009 statement and, even if the statement was admissible for the limited

purpose of impeaching Petitioner's trial testimony, for not requesting a limiting instruction.

Petitioner presented Claim Three to the Superior Court in his 2013 Rule 61 motion and then to

the Delaware Supreme Court in his post-conviction appeal from the denial of the 2013 Rule 61

motion.  Therefore, Petitioner will not be entitled to habeas relief unless the Delaware state

Supreme Court's decision was either contrary to, or an unreasonable application of clearly

established Federal law.

### 1.  Free-Standing Right-To-Counsel Argument

The clearly established federal law governing a person's Fifth Amendment right to

counsel during a custodial interrogation is the standard articulated in *Miranda v. Arizona*, 384

U.S. 436 (1966) and its progeny.  In *Miranda*, the Supreme Court held that statements made by a

defendant during a custodial interrogation must be suppressed unless he was informed of and

waived his right to counsel or his right to remain silent. *See id*. at 477-79; *see Colorado v.*

*Connelly*, 479 U.S. 157, 168 (1986).  The defendant must invoke his right to counsel clearly and

unambiguously,[5] and the invocation must be made when he is approached for a custodial

interrogation, not anticipatorily in some other context.  *See Davis v. United States*, 512 U.S. 452,

461-62 (1994).  If the defendant "clearly invokes" his right to counsel, the police may not

interrogate him unless counsel is made available or the defendant initiates the contact.  *See*

*Edwards v. Arizona*, 451 U.S. 477, 485-87 (1981).  A defendant may waive his right to counsel

but, in order for a waiver of *Miranda* rights to be valid: (1) "the relinquishment of the right must

have been voluntary in the sense that it was the product of a free and deliberate choice rather

---

[5] *See Miranda*, 384 U.S. at 444.

than intimidation, coercion, or deception"; and (2) "the waiver must have been made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Under the Sixth Amendment, a defendant may not be convicted of a crime unless he has

first been afforded the assistance of counsel.  *See Johnson v. Zerbst*, 304 U.S. 458, 467–68

(1938) ("Since the Sixth Amendment constitutionally entitles one charged with crime to the

assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional

prerequisite to a federal court's authority to deprive an accused of his life or liberty.")  "[T]he

Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages

of the criminal proceedings" and "[i]nterrogation by the State is such a stage."  *Montejo v.

Louisiana*, 556 U.S. 778 (2009).  The Sixth Amendment right, however, "is offense specific ...

[and] cannot be invoked once for all future prosecutions, for it does not attach until a prosecution

is commenced."  *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  Accordingly, "[i]ncriminating

statements pertaining to other crimes, as to which the Sixth Amendment right has not yet

attached, are ... admissible at a trial of those offenses." *Maine v. Moulton*, 474 U.S. 159, 176, n.

16 (1985).  Typically, when a defendant is read his *Miranda* rights and agrees to waive them,

that *Miranda* waiver also suffices to waive the Sixth Amendment right to counsel.  *See Montejo*,

556 U.S. at 786.  In *Montejo*, the United States Supreme Court expressly overruled the

"prophylactic rule" from *Michigan v. Jackson*, 475 U.S. 625 (1986), which presumed that any

subsequent waiver of a defendant's right to counsel is invalid.  *See Montejo*, 556 U.S. at 787,

797.

A police statement, however, can be involuntary even if it is made after the defendant was advised of, and waived, his *Miranda* rights.  A court determines if a statement was voluntarily made by evaluating the "totality of the circumstances surrounding the interrogation" to determine if the defendant made an uncoerced choice and had the requisite level of comprehension.  *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986).  "[C]oercive police activity is a necessary predicate to the finding that a statement is not 'voluntary.'" *Connelly*, 479 U.S. at 167.  "[C]oercion can be mental as well as physical."  *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960).  When determining voluntariness under the totality of the circumstances standard, courts must consider a number of factors in addition to "the crucial element of police coercion," such as "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health" and the failure of police to advise the defendant of his *Miranda* rights.  *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (discussing factors).  If a defendant was advised of his *Miranda* rights and voluntarily waived them, it will be difficult to claim that his statement was nonetheless involuntary.  *See Missouri v. Seibert*, 542 U.S. 600, 609 (2004) (noting that "maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina"); *see also Berkemer v. McCarty*, 468 U.S. 420, 433 n. 20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").  Notably, even if the government uses psychological tactics to obtain a statement from a

24

suspect, a statement is still considered voluntary as long as the suspect's decision to confess is a "product of the suspect's own balancing of competing considerations." *Miller*, 796 F.2d at 604.

Significantly, on collateral review, the issue of the voluntariness of a petitioner's statement to police is a legal question that is not entitled to the presumption of correctness afforded to a state court's factual findings. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985). Instead, a court must examine the record and make an independent determination as to whether the state court's legal determination of voluntariness was contrary to, or an unreasonable application of, Supreme Court precedent. *See id*. ("the ultimate question whether, under totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination."); *see also Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) ("[U]nder the AEDPA habeas standard, [a court is] required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent."). In contrast, state-court findings related to "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings," are entitled to the presumption of factual correctness in § 2254. *Mille*r, 474 U.S. at 117 (identifying the pre-1996 version of § 2254(d) as the applicable statutory section); *see also Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010) (identifying § 2254(e)(1) as the appropriate statutory section). If the state court's "account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it." *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985) (describing clearly-erroneous review generally).

Turning to the inquiry under § 2254(d) in this case, the Delaware Supreme Court did not cite clearly established federal law when considering the issues of ambiguity, voluntariness, and waiver with respect to Petitioner's February 19, 2009 statement.  However, the Delaware Supreme Court's decision is not contrary to clearly established federal law, because the Delaware cases to which it cited articulated the aforementioned applicable federal standards.  *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The Court must also determine whether the Delaware Supreme Court's denial of the instant argument was based on a reasonable application of clearly established federal law.  Petitioner does not deny that he was given a *Miranda* warning concerning the carjacking offense at the start of his interrogation, or that he waived his *Miranda* rights by agreeing to speak with police without counsel after being so informed.  Petitioner's signed written waiver of his *Miranda* rights supports these facts.  *See Holmes*, 2016 WL 1055050, at *1.  Instead, Petitioner contends that he later invoked his right to counsel during the interrogation, as demonstrated by the statement he made to the police officer that "I think I'm gonna need lawyer [sic] or something man because I don't know what . . . " (D.I. 13-18 at 14)  The police officer attempted to clarify Petitioner's statement, and started to repeat Petitioner's *Miranda* rights, but Petitioner cut him off and continued the conversation.  *See Holme*s, 2016 WL 1055050, at *5.

In his post-conviction appeal, the Delaware Supreme Court found that Petitioner's reference to a lawyer was not a clear and unambiguous invocation of his right to counsel.  After reviewing the totality of the circumstances, the Court concludes that the Delaware Supreme

26

Court's finding that Petitioner did not clearly and unambiguously invoke his right to counsel was based on a reasonable determination of facts.  For instance, Petitioner's prior involvement with the criminal justice system demonstrates his familiarity with his *Miranda* rights.  When the interrogation took place in February 2009, Petitioner had already been arrested forty-seven times for felonies and misdemeanors, as well as twenty-one times for various other offenses.  (D.I. 13-18 at 47-48)  In fact, by the time he was sixteen years old, Petitioner had been convicted of first degree possession of a deadly weapon by a person prohibited.  (*Id.*)   Additionally, after saying, "I think I'm gonna need lawyer [sic] or something man because I don't know what . . .," Petitioner continued to answer the officer's questions and denied possession of a weapon.  (D.I. 13-18 at 48)  Petitioner even attempted to get reduced charges by offering to provide information about other crimes in Wilmington. (D.I. 4 at 24; D.I. 13-18 at 49)  This conduct demonstrates a waiver of any intention to seek counsel.

Petitioner also contends that his waiver of his right to counsel was not knowing and intelligent because the officer misled him.  (D.I. 6-1 at 27)  Petitioner asked the officer if he should talk to him about the robbery offense, because the robbery offense was not the officer's case.  (D.I. 6-1 at 22)  The officer told Petitioner it did not matter because the carjacking offense and the robbery offense were committed on the same day and were "running together."  (D.I. 6-1 at 22)  Petitioner argues that this "deception" caused him to waive his right to counsel.  (D.I. 6-1 at 27)

Petitioner did not present this specific instance of alleged police deception as an independent challenge to the admission of his statement during his Rule 61 proceeding.  To the extent the Delaware Supreme Court considered the "running together" statement when it held

27

that there was "no evidence of coercion, intimidation, or deception by the police in obtaining [Petitioner's] explicit waiver" of his right to counsel, the Court concludes that the Delaware Supreme Court's holding withstands the totality of the circumstances test and was not an unreasonable application of clearly established federal law.

"Coercive police activity" is a "necessary predicate" to holding a confession constitutionally involuntary. *See Connelly*, 479 U.S. at 167. However, there is a distinction between police trickery as a means of coercion and police trickery as mere strategic deception; "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). In other words, a law enforcement agent may use some psychological tactics or even actively mislead a defendant in order to obtain a confession, provided that a rational decision remains possible. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (stating police misrepresentation that co-defendant had confessed did not render otherwise voluntary confession inadmissible). As a general rule, police can lie to a suspect about the extent of the evidence against the suspect or feign friendship with the suspect without fear of rendering the resulting confession involuntary. *See id*. at 731, 737–39. "Subtle pressures may be as telling as coarse and vulgar ones. The question is whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer." *Garrity v. State of N.J.*, 385 U.S. 493, 496 (1967); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (stating test for determining voluntariness of confession is whether, in light of all surrounding circumstances, defendant's will was overborne).

Here, having already been advised of his *Miranda* rights, Petitioner was aware that any statements made would be used against him in a court of law.  Although a knowing and voluntary *Miranda* waiver does not necessarily demonstrate that a subsequent statement was voluntary, it does show that Petitioner knew he had the right to remain silent, yet he still provided a statement.  *See Oregon v. Elstad* , 470 U.S. 298, 318 (1985) (acknowledging that suspect's choice to speak after receiving *Miranda* warnings is highly probative of voluntariness).  Consequently, the precise issue is whether the officer's statement about the carjacking offense and the robbery offense "running together" so seriously changed the circumstances such that Petitioner's answers were no longer voluntary, or Petitioner was no longer making a knowing and intelligent relinquishment of his rights.  *See Wyrick v. Fields*, 459 U.S. 42, 47 (1982).

After reviewing the totality of the circumstances, the Court concludes that neither the words spoken by the police officer nor the context in which they were spoken amounted to coercive police activity impairing Petitioner's ability to make a knowing relinquishment of his *Miranda* rights.  The officer's statement that the offenses were "running together" occurred after the officer had read Petitioner his *Miranda* rights, after Petitioner signed the *Miranda* waiver, after the police officer's clarification of Petitioner's *Miranda* rights, and after Petitioner had already volunteered information about the robbery offense.  The Court rejects Petitioner's contention that the officer's statement misled him into waiving his already waived *Miranda* rights.

Finally, Petitioner asserts that he did not intend the scope of his *Miranda* waiver to include discussion of the robbery offense.  He states that his Sixth Amendment right to counsel had already "attached to the robbery charges" at the time of the February 19, 2009 interrogation

and, "simply by initiating contact with [Petitioner] and discussing the robbery charge police violated his Sixth Amendment right to have counsel represent him during any discussion of the robbery charges." (D.I. 4 at 25) The Court is not persuaded. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010). As the Delaware Supreme Court found, and as demonstrated by the Court's preceding discussion, "[Petitioner] volunteered information related to the robbery, which acted as a waiver of his Sixth Amendment right to counsel regarding the robbery charges." *Holmes*, 2016 WL 1055050, at *5.

For the reasons set forth above, the Delaware Supreme Court's determination that Petitioner's incriminating recorded statement was voluntary was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable application of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, the Court will deny this portion of Claim Three as meritless.

## 2. Evidentiary Argument

Next, Petitioner contends that, even if his recorded statement was admissible under federal constitutional law, the State failed to comply with the Delaware Rules of Evidence in how it admitted and used the statement at trial because: (1) it admitted his statement only as impeachment evidence under D.R.E. 613 but referred to it as affirmative evidence in closing arguments (D.I. 6-1 at 30-32); and (2) the Superior Court erred by not giving a limiting instruction on this point. (D.I. 6-1 at 31)

As a general rule, state court evidentiary rulings are not cognizable on federal habeas review unless the petitioner shows the admission of evidence caused a fundamental unfairness at trial in violation of his due process rights. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This portion of Claim Three asserts an error of Delaware law, and Petitioner has failed to demonstrate any related deprivation of a due process right. Therefore, the Court will deny the Delaware evidentiary challenge for failing to assert an issue cognizable on federal habeas review.

### 3. Ineffective Assistance

Petitioner contends that defense counsel provided ineffective assistance for not filing a motion to suppress his recorded statement or, if it was admissible for impeachment purposes, for not seeking a limiting instruction. The Delaware Supreme Court denied this argument as meritless. Therefore, the Court must review the Delaware Supreme Court's decision under § 2254(d) to determine if this portion of Claim Three warrants habeas relief.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

31

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegation. Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court also concludes that the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. The Delaware Supreme Court held that defense counsel did not perform deficiently by not filing a motion to suppress the February 19, 2009 statement because the statement was not obtained in violation of Petitioner's *Miranda* rights. Relatedly, given the absence of a *Miranda* violation, the Delaware Supreme Court found that defense counsel reasonably determined there was no reason to request a limiting instruction. Given the Court's own determination that Petitioner's *Miranda* challenge to the February 19, 2009 statement lacks merit, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that defense counsel's decision not to challenge the admission of the statement or to request a limiting instruction was reasonable.

In turn, the Delaware Supreme Court reasonably applied *Strickland* in concluding that Petitioner was not prejudiced by defense counsel's actions. Since Petitioner testified at trial and admitted to taking Freeman's car and taking drugs from Elder's home, the only issue was whether Petitioner had a weapon during the carjacking and robbery. Given Petitioner's repeated and consistent assertions during the February 19, 2009 statement that he did not have any type of weapon during the carjacking, he cannot demonstrate a reasonable probability that suppressing the statement or giving a limiting instruction would have changed the outcome of the trial. Accordingly, the Court concludes that Petitioner's ineffective assistance of counsel claim fails to satisfy § 2254(d).

For all of these reasons, the Court will deny Claim Three in its entirety.

### D.   Claim Four:  Interruption of Closing Argument

At the end of Petitioner's trial, defense counsel was attempting to argue for a lesser-included offense. *See Holmes*, 2016 WL 1055050, at *5. The State objected on the mistaken belief that defense counsel was making a choice-of-evils argument, even though defense counsel had not submitted a proposed instruction for it. *Id.* at *2. The Superior Court sustained the objection and instructed the jury that the "concept [of choice of evils] is simply not in this case," so the jury "may not consider that the defendant was in some kind of bind, and just had to do what he did with regard to taking the car." *Id.* at *3. The Superior Court elaborated, stating, "We discussed it among counsel yesterday . . . and I told [defense counsel] that if he wanted an instruction on that defense . . . that he should present a written request in writing for an instruction which he declined to do." *Id.*

In Claim Four, Petitioner argues that the Superior Court violated his Fifth, Sixth,

33

and Fourteenth Amendment rights by interrupting defense counsel's closing argument and instructing the jury that a choice-of-evils defense was not available. Petitioner contends that the Superior Court's comments mischaracterized and discredited his defense, misled the jury, excluded his testimony from the jury's consideration, prevented him from arguing his version of the facts, and demeaned counsel in front of the jury. He further argues that defense counsel was ineffective for failing to object or to move for a mistrial when the alleged error occurred.

On direct appeal, Petitioner argued that the Superior Court's instruction mischaracterized his defense and criticized defense counsel in front of the jury, but he presented this argument without invoking or relying on any federal constitutional provision or legal standard. The Delaware Supreme Court, as it later acknowledged, misconstrued Petitioner's argument on direct appeal. *See Holmes*, 2016 WL 1055050, at *3. The Delaware Supreme Court understood Petitioner to be arguing that he was entitled to a choice-of-evils instruction and rejected the claim. *See Holmes*, 2010 WL 5043910, at *5.

In his 2013 Rule 61 motion, Petitioner presented all of the claims underlying Claim Four, except for the argument that he was denied the right to testify on his own behalf. The Superior Court denied his 2013 Rule 61 motion, and the Delaware Supreme Court affirmed that decision, this time adjudicating the arguments in Claim Four on their merits. *See Holmes*, 2016 WL 1055050, at *4-6.

### 1. Petitioner's right to testify on his own behalf

Petitioner contends that the Superior Court's comments on choice-of-evils denied him his right to testify on his own behalf under the Fifth, Sixth, and Fourteenth Amendments. Despite the fact that he actually did testify, Petitioner argues that the Superior Court's comments

prevented the jury from considering some or all of his testimony, effectively depriving him of that right.

Petitioner did not exhaust state remedies for the instant argument because he did not present it to the Delaware Supreme Court on direct or postconviction appeal.  At this point in time, Petitioner cannot return to the Delaware state courts to exhaust state remedies because a third postconviction motion would be barred as untimely under Rule 61(i)(1) and as successive under Rule 61(i)(2).  Petitioner does not attempt to invoke either exception to the procedural bars by pointing to new evidence suggesting that he is actually innocent or a new rule of constitutional law with retroactive application.  *See* Del. Super. Ct. R. 61(d)(2), (i)(5).  Given these circumstances, the Court must treat the argument as technically exhausted but procedurally defaulted, meaning that the Court cannot reach its merits unless Petitioner demonstrates cause and prejudice or a miscarriage of justice.

In an attempt to establish cause, Petitioner asserts the ineffective assistance of post-conviction counsel for failing to assert this claim in his 2013 Rule 61 motion and subsequent post-conviction appeal.  By mentioning post-conviction counsel's performance, the Court presumes Petitioner is attempting to establish cause under the limited *Martinez* exception to procedural default.  However, since the argument concerning the denial of Petitioner's right to testify on his own behalf is not asserted as part of an ineffective assistance of trial counsel claim, the limited *Martinez* exception is inapplicable to establish cause here.

Petitioner's failure to establish cause obviates the Court's need to address the issue of prejudice.  Nevertheless, Petitioner cannot show that the alleged violation of his rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

35

dimensions." *Murray*, 477 U.S. at 494.  Significantly, Petitioner actually testified in his own defense at trial. Even though Petitioner argues that the jury was not free to consider his testimony, the Delaware Supreme Court found differently: "A fair reading of the record indicates that before and after the interruption, [Petitioner's] counsel was able to fully argue [Petitioner's] version of events—specifically, that [Petitioner] had no weapon and took the car to get away from Freeman's threatening behavior—and that if the jury embraced that, it should acquit him on the more serious charges." *Holmes*, 2016 WL 1055050, at *6.  The Superior Court instructed the jury on the availability of lesser-included offenses,[6] and the jury is presumed to have followed that instruction. *See Murray*, 477 U.S. at 496.

Petitioner also fails to demonstrate that his procedural default should be excused under the miscarriage-of-justice exception, because he offers no new reliable evidence of his actual innocence.  Consequently, the Court will deny the instant portion of Claim Four as procedurally barred.

## 2.  Prejudicial effect of Superior Court's interruption of closing argument

In Claim Four, Petitioner also argues that the Superior Court's comments mischaracterized and discredited his defense, misled the jury, prevented him from arguing his version of the facts, and demeaned defense counsel in front of the jury.  The Delaware Supreme Court adjudicated these arguments on the merits during Petitioner's post-conviction appeal from the Superior Court's denial of his 2013 Rule 61 motion.  Consequently, Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

---

[6]*Holmes*, 2016 WL 1055050, at *6.

In essence, Petitioner argues that he suffered various forms of prejudice from an alleged error committed by the Superior Court during his closing argument.  The clearly established federal law applicable to assessing the prejudicial impact of a constitutional error during a state criminal trial is the harmless error standard of review set forth in *Brecht v. Abrahamson*, 507 U.S. 298 (1993).  Under the standard articulated in *Brecht*, a court must determine whether the trial error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

As a general rule, on direct appeal, a trial judge's comments or interruptions during defense counsel's closing argument will only warrant reversal if the trial judge's conduct, measured by the evidence presented and the result of the trial, was clearly prejudicial to the defendant.  *See United States v. Simpson*, 337 F.3d 905, 908 (7th Cir. 2003); *United States v. Hammer*, 25 F. Supp. 2d 518, 533 (M.D. Pa. 1998).  The relevant question is not whether the trial judge's conduct left something to be desired, but "whether his behavior was so prejudicial that it denied ... [the defendant][] a fair, as distinguished from a perfect, trial." *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980); *see also United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir. 1985) ("Although a few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant a reversal, a balancing process must be employed to determine whether the trial judge's comments have pervaded the overall fairness of the proceeding.").  "The main concern is whether the comments or interruptions "impress[ed] on the jury a belief of the defendant's guilt or a view about the credibility of the defendant or any of the witnesses." *United States v. Taylor*, 802 F. App'x 604, 609 (2d Cir. 2020) (analyzing whether the trial court's interruption of defense counsel's cross-examination in front of the jury violated

defendant's constitutional right to a fair trial).  Significantly, "[g]ood faith mistakes of judgment or misapplication of the proper rules of law by the [trial] court are acts which do not reflect great bias on the part of the trial judge." *Wilensky*, 757 F.2d at 598.

On post-conviction appeal of the 2013 Rule 61 motion, the Delaware Supreme Court rejected Petitioner's instant allegations of error, explaining:

> Although we agree with [Petitioner] that his counsel's argument was confused by the trial court and then by this Court on direct appeal, we nonetheless find no basis for relief.  A fair reading of the record indicates that before and after the interruption, [Petitioner's] counsel was able to fully argue [Petitioner's] version of events— specifically, that [Petitioner] had no weapon and took the car to get away from Freeman's threatening behavior—and that if the jury embraced that, it should acquit him on the more serious charges. Furthermore, the trial court gave an instruction on the lesser-included charges.  Given these realities, we find no basis to conclude that [Petitioner] was prejudiced by the trial court's interruption and admonishment based on the State's objection.

*Holmes*, 2016 WL 1055050, at *6.

The Delaware Supreme Court did not cite any clearly established federal law in its decision.  Nevertheless, for the following reasons, the Court concludes that its decision is neither contrary to, nor based on an unreasonable application of, *Brecht*'s "harmless error" standard.

As an initial matter, the Court notes that the Superior Court's comments during closing argument did not actually prevent Petitioner's defense counsel from presenting his defense or arguing his version of the facts to the jury.  *See Holmes*, 2016 WL 1055050,  at *6.  In addition, the Superior Court instructed the jury that it was to consider lesser-included offenses (D.I. 13-3 at 149, 150) and that it was to consider only the evidence in the case and determine the facts (D.I. 13-3 at 148, 149).  The jury is presumed to have followed these instructions.  *See Richardson v. Marsh,* 481 U.S. 200, 206 (1987).

Moreover, even if the Superior Court's comment limited or hampered defense counsel's argument, the error was harmless.  First, the Superior Court interrupted defense counsel due to its mistaken assumption that defense counsel was going to request a choice-of-evils instruction, and not as a result of bias.  Second, as the Delaware Supreme Court found on direct appeal and again on post-conviction appeal, the "evidence against [Petitioner] was sufficient to sustain his convictions," and Petitioner's counsel was able to fully argue his defense.  *See Holmes*, 2016 WL 1055050, at *6; *Holmes*, 2010 WL 5043910, at *5. *See also Moreno v. Valenzuela*, 2017 WL 1534276, at *8 (E.D. Cal. Apr. 28, 2017) (finding that the state trial court's act of  barring defendant's trial counsel from arguing that California's wiretapping statute requires proof that the communication was intercepted "while it is in transit" did not warrant habeas relief because the evidence was sufficient to sustain his convictions and defendant suffered no prejudice under *Brecht*.).  Third, the Superior Court instructed the jury that it was to consider lesser-included offenses and that it was to consider only the evidence in the case and determine the facts.  The jury is presumed to have followed those instructions, and such instructions helped to lessen any prejudice to Petitioner.  Finally, it does not appear that the Superior Court's statement conveyed to the jury any impression of the court's belief in Petitioner's guilt.  *See, e.g,, United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985) ("If we conclude that the conduct of the trial had so impressed the jury with the trial judge's partiality to the prosecution that this became a factor in determining the defendant's guilt, then the convictions should be reversed.").  Given this record, the Court concludes that the Superior Court's interruption of defense counsel's closing argument did not have a substantial and injurious effect or influence in determining the jury's verdict.

Petitioner also contends that the Superior Court disparaged defense counsel in front of the jury, undermining his credibility and the defense.  "A state trial judge's conduct in a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits."  *Jones v. Spitzer*, 2003 WL 1563780, at \*42 (S.D.N.Y. Mar. 26, 2003).  The Superior Court's comments regarding the choice-of-evil instruction were not so substantial as to impair the functioning of the jury or to tarnish or destroy the court's appearance of neutrality.

Petitioner's contention that the Superior Court's comments implied that his counsel was not diligent is similarly unavailing.  Even if the jury interpreted the Superior Court's comment in that manner, similar or more egregious conduct by trial judges in other cases have not warranted relief.  For example, in *United States v. Maceo*, 947 F.2d 1191, 1200 (5th Cir. 1991), the trial judge accused trial counsel of misstating the law.  The Fifth Circuit held that defendant's claim that the trial judge's accusation violated defendant's rights to counsel and a fair trial was "overstated" and "plainly lack[ed] merit." *Id.*  The Sixth Circuit held that the trial judge's admonishment to the jury to ignore certain comments by defense counsel and its warning to defense counsel about his use of the term "Arabs" did not create an unfair trial. *See United States v. Foster*, 2000 WL 977345, at \*4 (6th Cir. July 7, 2000).  In *United States v. Pisani*, the Second Circuit held that the trial judge's frequent comments that defense counsel's remarks were improper or meritless, that defense counsel was mumbling, that his line of questioning was boring and a waste of time, and that he was misleading the jury, did not deprive the defendant of a fair trial.  *See Pisani*, 773 F.2d at 403-04.  After comparing the Superior Court's interruption of

40

defense counsel's closing with the instances of trial court error in the aforementioned cases, the Court concludes that the Delaware Supreme Court reasonably applied the underlying principles of the *Brecht* standard in holding that Petitioner was not prejudiced by the Superior Court's interruption.

### 3.  Ineffective assistance of counsel

Petitioner also asserts that defense counsel provided ineffective assistance for not objecting to the Superior Court's interruption of his closing argument or for not moving for a mistrial.  The Delaware Supreme Court adjudicated the merits of this argument under the correct *Strickland* standard.  Consequently, Petitioner will only be entitled to relief if the Delaware Supreme Court's decision was based on an unreasonable application of *Strickland*.

The Delaware Supreme Court concluded that Petitioner did not suffer any prejudice from the allegedly deficient performance of his trial counsel because, despite the Superior Court's interruption, "[Petitioner's] counsel was able to fully argue [Petitioner's] version of events — specifically, that [Petitioner] had no weapon and took the car to get away from Freeman's threatening behavior—and that if the jury embraced that, it should acquit him on the more serious charges.  *Holmes*, 2016 WL 1055050, at *6.  In addition, "the trial court gave an instruction on the lesser-included charges."  *Id*.

The record supports the Delaware Supreme Court's determination that defense counsel was able to fully present Petitioner's defense despite the Superior Court's interruption.  As a result, Petitioner cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to object to the interruption or counsel's

41

failure to move for a mistrial.  Accordingly, the Court will deny the ineffective assistance portion of Claim Four for failing to satisfy § 2254(d).

### E.   Claim Five: Cumulative Error

In his final Claim, Petitioner contends that the cumulative effective from defense counsel's failure to seek suppression of his recorded February 19, 2009 statement and to object when the Superior Court interrupted his closing argument deprived him of his due process rights. Petitioner presented this argument to the Delaware Supreme Court on post-conviction appeal, which denied the argument as meritless.  Therefore, Claim Five will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default."  *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).[7]  Pursuant to the cumulative error doctrine,

> Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

---

[7] The Tenth Circuit has stated that the United States Supreme Court has not recognized the concept of cumulative error.  *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019).  If there is no clearly established federal law with respect to a cumulative error argument, it would appear that the Court's § 2254(d) analysis should end there.

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Given the Third Circuit's recognition of the cumulative error doctrine in habeas proceedings, the Court will review Claim Five.

Here, the Delaware Supreme Court reviewed and rejected each of the two underlying errors on their merits, and also rejected Petitioner's cumulative error argument because he failed to establish defense counsel was ineffective in either of the subsidiary claims. *See Holmes*, 2016 WL 1055050, at *6. This Court has also concluded that the underlying errors and related ineffective assistance of counsel claims lack merit and did not cause any prejudice. Since Petitioner has not provided anything to demonstrate "actual prejudice" even when the two Claims are considered together, the Court will deny Claim Five as meritless.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.

43